## In the District Court of the United States
## For The District of South Carolina
### BEAUFORT DIVISION

| | | |
|---|---|---|
| Robin Epting, *a/k/a* ) | ) | Civil Action No.  9:05-2257-CMC-GCK |
| Robin Darr Epting, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Lt. J. D. Shelton, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### I.  INTRODUCTION

The Plaintiff, Robin Epting ("Plaintiff" or "Epting"), filed this action against Lt. J. D. Shelton (the "Defendant"), an employee of Laurens County Sheriff's Department.  Plaintiff alleges that during the course of his arrest on May 18, 2005, he was subjected to excessive force by Defendant in violation of 42 U.S.C. § 1983.

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

### II.  *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5 (1980) (*per curiam*);  *Estelle v. Gamble*, 429 U.S. 97 (1976);  *Haines v. Kerner,* 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  *Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings

means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

### III. FACTUAL BACKGROUND

The facts, either uncontested or taken in the light most favorable to the Plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record, are set forth below.

On May 18, 2005, Deputy David Craig ("Deputy Craig") of Laurens County Sheriff's Office was dispatched to Cindy Drive, in Cross (Laurens County) where Plaintiff's mother, Joyce Epting, appeared to be in danger. The call for assistance indicated that the Plaintiff was high on drugs, possibly had a weapon, and had been abusive to his mother. After turning onto Cindy Drive, Deputy Craig identified the Plaintiff leaving in a vehicle. A traffic stop was initiated and upon speaking to the Plaintiff's mother, Deputy Craig was informed that the Plaintiff had been smoking "ice" for three weeks, that his supply had run out and, as a result, the Plaintiff had become very aggressive and verbally abusive toward his mother. Deputy Craig, while conducting the investigation of this incident, confirmed that there was an outstanding warrant for the Plaintiff as well. Deputy Craig arrested the Plaintiff and, in a search incident to that arrest, a glass pipe with brown residue and a Bic lighter were found in the Plaintiff's pockets. Deputy Craig confiscated the glass pipe and left the Bic lighter in Plaintiff's pants pocket. Deputy Craig handcuffed Plaintiff's hands in front of his body, and then placed him in his patrol vehicle for transport to the detention center.[1]

---

[1] *See* Exhibit A at p. 1, attached to Defendant's Memorandum. [19-2]

While transporting Plaintiff in the patrol car to the detention center, Deputy Craig smelled smoke, and realized that the Plaintiff's shirt was on fire, causing Plaintiff to suffer burns on his abdomen.  According to Plaintiff, his hands were handcuffed in front of his body, and he lit a cigarette.  He then fell asleep as a result of taking prescription drugs (pain medication, sleeping medication and Lexapro) and accidently set his shirt on fire.[2]  Deputy Craig decided to transport Plaintiff to Laurens County Hospital for immediate medical attention, and asked for assistance to be provided at the hospital to get the Plaintiff into the emergency department because of Plaintiff's aggressive behavior.  Several deputies, including Deputy Shelton, met Deputy Craig at the Laurens County Hospital.

The Plaintiff states he told Deputy Craig he did not want medical treatment for his burns.[3] Plaintiff was generally uncooperative with deputies who were attempting to get him out of Deputy Craig's patrol car, and he was removed from Deputy Craig's patrol car by five officers.  Plaintiff's foot became caught under the cage of Deputy Craig's patrol car and Lt. Haupfear maneuvered the Plaintiff's foot from under the patrol car cage.  After Plaintiff was taken from the patrol car and while being escorted from the parking lot into the emergency department, the Plaintiff became irate and acted aggressively, threatening to strike Deputy Shelton.  Several officers restrained the Plaintiff and placed him on the ground.  Deputies Shelton and Haupfear held the Plaintiff in the upper region of his body while other officers put shackles on his legs to keep control of him and to prevent him from kicking the officers.[4]  From this incident, Plaintiff alleges in his Complaint that he sustained an injury to his ankle at that time, when he was forcibly taken to the ground in the hospital parking lot as he was being escorted to the emergency department.  Specifically, Plaintiff

---

[2]     *See* Plaintiff's Complaint [10-1] at p. 3.

[3]     *Id.*

[4]     *See* Exhibit C, attached to Defendant's Memorandum.  [19-2]

alleges that Defendant Shelton "had my left leg twisting my ankle" which resulted in his ankle being broken.[5]

Despite the restraints, Plaintiff continued to be disruptive in the emergency room, according to hospital records.[6] The emergency room records of May 18, 2005, state that the Plaintiff was uncooperative, verbally abusive, and used foul language to hospital personnel and officer. Significantly, the emergency department records from the day do not note the alleged injury to Plaintiff's ankle, and it appears that Plaintiff was treated only for the burns on his abdomen as a result of dropping a cigarette (according to Plaintiff) or a lighter (according to police) on his shirt while in the back of a patrol car. This court's review of the Laurens Hospital medical records of treatment received by the Plaintiff on May 18, 2005, indicates that the Plaintiff had no injury, no visible trauma to his extremities, and that he had normal range of motion to his extremities.[7] After being treated for the burns to his abdomen, Plaintiff was released from the emergency department of Laurens County Hospital and was booked at the Laurens County Detention Center.

On May 19, 2005, the Plaintiff was returned to the emergency department of the Laurens County Hospital because of complaints of pain in both ankles. An x-ray taken on May 19, 2005 revealed that the Plaintiff had a minimally displaced left ankle fracture for which he was treated.[8]

---

[5] *See* Complaint [10-1] at p. 4. The court notes that Plaintiff alleges that Defendant Shelton was the officer who twisted his left ankle, but Defendant Shelton states he was restraining the upper portion of Plaintiff's body while Deputies Craig, Carlton, and Sims put ankle shackles on Plaintiff's legs to keep him from attempting to kick the officers. *See* Exhibit C, attached to Defendant's Memorandum. [19-2]

[6] *See* Exhibits A, B, and C, attached to Defendant's Memorandum. [19-2]

[7] *See* Exhibits D and D attached to Defendant's Memorandum. [19-2]

[8] *See* Exhibits F and G, attached to Defendant's Memorandum [19-2]

## IV.  PROCEDURAL HISTORY IN FEDERAL COURT

The Plaintiff commenced this action on August 19, 2005, contending that the Defendant had used excessive force against Plaintiff.  On October 26, 2005, an Amended Complaint was filed and an Answer was filed on November 29, 2005.  [10-1; 15-1]

On January 18, 2006, an Order was filed allowing the Defendant forty five days to file dispositive motions.  [17-1]  On March 6, 2006, the Defendant filed a motion for summary judgment and a supporting Memorandum..  [19-1-19-9]  On March 7, 2006, the undersigned issued an order under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified the Plaintiff of the summary judgment procedure.[9]  [20-1]

## V.  THE STANDARD FOR DETERMINING
## A MOTION FOR SUMMARY JUDGMENT

The Defendant's Motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*,  818 F. 2d 1126 (4th Cir. 1987).  Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.  *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

---

[9] In *Roseboro v. Garrison*, the Fourth Circuit held that *pro se*  Plaintiffs must be advised that their failure to file responsive material when a defendant moves for summary judgment may well result in entry of summary judgment against them.

In deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In addition, "once a Plaintiff 'has named a witness to support [his] claim, summary judgment should not be granted without . . . somehow showing that the named witness' possible testimony raises no genuine issue of material fact.'" *Miltier*, 896 F.2d at 852, *quoting Celotex v. Catrett*, 477 U.S. 317, 328 ( 1986) (White J., concurring).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendants are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence. The nonmoving party, then, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## VI.  DISCUSSION

This report and recommendation addresses the plaintiff's claims on the merits.[10]  The court construes Plaintiff's claim as one for excessive force used by the Defendant in violation of Plaintiffs's constitutional rights pursuant to 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979).  As Judge Hall explained in *United States v. Cobb*, 905 F.2d 784 (4th Cir. 1990),[11] the first step in the analysis is to identify the specific constitutional right allegedly infringed by the challenged application of force.  *United States v. Cobb*, 905 F.2d at 288, *citing Graham v. Connor*, 490 U.S. 386 (1989).  When determining the specific constitutional right which may have been violated, it is necessary to look to the Plaintiff's status at the time of the use of force.

In the present case, Plaintiff was a pretrial detainee at the time of the alleged incident giving rise to this action.  The Due Process Clause protects a pretrial detainee from " 'the use of excessive force that amounts to punishment." ' *United States v. Cobb*, 905 F.2d 784, 788 (4th Cir.1990)(*quoting Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)), *cert. denied*, 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991).  *In Norman v.*

---

[10]  As a threshold matter, the court would begin its discussion by addressing the question whether Plaintiff had exhausted his administrative remedies prior to filing suit.  The Prison Litigation Reform Act of 1996 (the "PLRA"), codified at 42 U.S.C. 1997e, specifically requires that all administrative remedies be exhausted by an inmate prior to the filing of an action relating to prison conditions.  *See Porter v. Nussle*, 534 U.S. 516 (2002).  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life.  However, Plaintiff alleges that he did not file a grievance in this matter because there was no prisoner grievance procedure available to him.  *See* Amended Complaint [10-1] at p. 2.  At the time Plaintiff made this statement, he was detained in the Spartanburg County Detention Center.  For purposes of this Report and Recommendation, the court will assume that Plaintiff is correct, and that there were no administrative remedies available to him while he was incarcerated at the Laurens County Detention Center, and will address Plaintiff's complaint on the merits.

[11]  The panel consisted of Chief Judge Ervin, Judge Hall, and Judge Chapman.

*Taylor*, 25 F.3d 1259, 1263 (4th Cir.1994 (*en banc*), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995), the Fourth Circuit held that "absent the most extraordinary circumstances" excessive force claims do not lie where the injury is de minimis.  Although *Norman* concerned a convicted prisoner (analyzing claims under the Eighth Amendment) rather than a pretrial detainee, its de minimis standard may also be applicable to pretrial detainees.  *Riley v. Dorton*; 115 F.3d 1159 (4th Cir.1997)(holding that a purely de minimis level of injury does not constitute the kind of excessive force amounting to punishment that *Bell* requires), *cert. denied*, 520 U.S. 1030 (1997); *Williams v. Dehay*, 81 F.3d 153, 1996 WL 128422 (4th Cir.1996) [Table] (affirming summary judgment on a pretrial detainee's excessive force claim where the plaintiff showed no more than de minimis injury).  Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis.  *See Norman*, 25 F.3d at 1262-63.

       Plaintiff's liberty interest, as secured by the Due Process Clause of the Fourteenth Amendment, was to be free from "the use of excessive force that amounts to punishment."  *United States v. Cobb*, 905 F.2d at 288 (footnote and citations omitted).  "The analysis for determining whether an unconstitutional infliction of pain has occurred includes both an objective and subjective component.  Under the objective component . . . a reviewing court is to ask whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc), *quoting Hudson v. McMillian*, 503 U.S. 1, 8 (1992), and citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

       Plaintiff alleges that the Defendant used excessive force against him, resulting in his ankle being broken.  The Defendant, in turn, argues that the use of force did not violate Plaintiff's constitutional rights as the force used was reasonably necessary, it was justified under the circumstances, and further that to the extent Plaintiff was injured, his injuries were his own fault, as he failed to cooperate with the deputies while in the parking lot at the hospital because he felt

he did not need medical treatment.[12]  In the present case, regardless of whether Plaintiff's broken ankle constitutes a de minimis injury, Plaintiff has failed to show that Defendant Shelton's actions while attempting to put leg shackles on him amounted to punishment in violation of the Fourteenth Amendment.  "In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *see also United States v. Cobb, supra; and Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1299-1300 (E.D.N.C.1989).  Indeed, the facts of the case indicate that Plaintiff was coming down off of a three-week drug high, was aggressive and verbally abusive to his mother[13] and to Deputy Craig[14] and was uncooperative in the hospital parking lot to such a degree that it required Deputy Craig **and five other deputies** to remove Plaintiff from Deputy Craig's patrol car.[15]

It is well-settled that the reasons for a particular use of force are to be judged from the standpoint of a reasonable officer on the scene rather than with the advantage of 20/20 hindsight. It is also well-established that not every push, shove, or use of force by an officer will give rise to a claim for excessive force, even though it may later seem that such conduct was unnecessary. Police officers are required to make split-second judgments in circumstances that are tense, uncertain, and/or fluid, and the law recognizes that the amount of force as may be necessary may

---

[12]    *See* Answer [15-1] *and* Plaintiff's Memorandum in opposition to Defendant's Motion for Summary Judgment. [21-1]

[13]    *See* Defendant's Exhibits A, B, and C, attached to Defendant's Memorandum. [19-2]

[14]    *See* Plaintiff's Memorandum [21-1] at p. 5.

[15]    *See* Defendant's Exhibit A at p. 2, attached to Defendant's Memorandum. [19-2]

vary from one particular situation to another. In claims such as this, the question to be determined is whether or not the conduct of the officer involved was objectively reasonable. If the officer's conduct is said to be objectively reasonable, then there can and should be no claim for excessive force. *Graham v. Connor*, 490 U.S. 386 (1989). The use of force applied on May 18, 2005, with respect to the Plaintiff was reasonable, appropriate, and constitutionally permissible, and it is recommended that the Defendant be granted summary judgment.

### The Defendant is Entitled to Qualified Immunity under Section 1983

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the United States Supreme Court recognized that immunity for government officials exists if their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known to exist. When making a determination on the issue of qualified immunity, a court should determine (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer and/or person that his conduct violated that right. *Saucier v. Katz,* 533 U.S. 194, 200 (2001); *Brown v. Gilmore,* 278 F.3d 362, 367 (4th Cir. 2002). To be clearly established for purposes of qualified immunity, the contours of the right at issue must be sufficiently clear that a reasonable official would understand that the action he is taking will violate that right. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

It is also well-settled that qualified immunity protects all but those who are plainly incompetent or those who knowingly violate the law. *Willingham v. Crooke,* 412 F.3d 553, 559 (4th Cir. 2005); *Malley v. Briggs,* 475 U.S. 335, 341. Qualified immunity also protects officials from bad guesses in gray areas and insures that they are liable only when they transgress bright lines. When the law in an area is unsettled, there is no bright line or clear law for a defendant to violate. Entitlement to qualified immunity has been determined to be a question of law for the Court. *Willingham v. Crooke,* 412 F.3d 553, 559 (4th Cir. 2005). When there is no disputed issue

of fact relevant to the Court's inquiry into qualified immunity, there is no question for the Court to submit to a jury. In the present case, the Plaintiff has failed to show that the Defendant violated his established constitutional rights. Therefore, the Defendant is entitled to qualified immunity in his individual capacity.

## **RECOMMENDATION**

Based upon the foregoing, it is recommended that the Defendant's Motion for Summary Judgment **[19-1] be granted**.

_____
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

November 20, 2006

Charleston, South Carolina

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's

failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

> **Larry W. Propes, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**